**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MARGARET KEENAN<br>26635 Amherst Circle, Apt 310<br>Beachwood, OH 44122<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ARMOND BUDISH, *in his personal and*<br>*official capacities,*<br>6 Kenwood Ct.<br>Beachwood, Ohio 44122,<br><br>WILLIAM MASON, *in his personal and*<br>*official capacities,*<br>3667 Rachel Ct.<br>Seven Hills, Ohio 44131,<br><br>DOUGLAS DYKES, *in his personal*<br>*capacity,*<br>3659 Grosvenor Road<br>Cleveland Heights, Ohio 44118,<br><br>*&*<br><br>CUYAHOGA COUNTY<br>℅ Department of Law<br>2079 E. 9th Street<br>Cleveland, OH 44115<br><br>　　　　Defendants. | **CASE NO.:**<br><br>**JUDGE:**<br><br>**COMPLAINT**<br><br><br>**Plaintiff demands a trial by jury on**<br>**all issues triable of right by a jury** |

## PARTIES

1.　　Plaintiff Margaret Keenan is a citizen of the United States and resides in

Cuyahoga County, Ohio.

2. Ms. Keenan was employed by the County from in or around 2006 until 2013.  The County rehired Ms. Keenan as the Director of the Office of Budget and Management of the County in October 2015.  She served in this position until her termination on or around December 28, 2019.

3. Defendant Cuyahoga County (the "County") is a political subdivision located in Ohio and is a legal entity capable of being sued pursuant to Section 2744 of the Ohio Revised Code.

4. Defendant Budish ("Budish") remains, and was at all relevant times, the County Executive for the County, exercising supervisory and policy-making authority for the County, and acting under color of state law. He is sued in his personal and official capacities.

5. Defendant Mason ("Mason") remains, and was at all relevant times, the Chief of Staff for Budish, exercising supervisor and policy-making authority for the County, and acting under color of state law.  The County hired Defendant Mason in July 2019.  He is sued in his personal and official capacities.

6. Defendant Dykes ("Dykes") was at all relevant times, the Chief Talent Officer for the County, exercising supervisor and policy-making authority for the County, and acting under color of state law.

7. Defendants are each an "employer" and "person" within the meaning of Chapters 4112 of the Ohio Revised Code.

8. The County is a "person" within the meaning of 42 U.S.C. Section 1983 and was at all relevant times the employer and principal of Defendants Budish, Mason, and Dykes.

2

9.    The County operates the Cuyahoga County Corrections Center ("Corrections

Center"), where it is liable for acts and omissions taken under its customs,

policies, or practices, and responsible for training and supervising its employees.

## JURISDICTION AND VENUE

10.    This is a proceeding for damages to redress the deprivation of free speech under

the First Amendment of the U.S. Constitution secured to Plaintiffs by 42 U.S.C.

Section 1983, and an action for damages under the laws of Ohio.

11.    Jurisdiction of this action is conferred by 28 U.S.C. Sections 1331 and 1337.  This

Court has supplemental jurisdiction over state claims alleged herein pursuant to

28 U.S.C. Section 1367.

12.    Ms. Keenan has filed a charge of discrimination and retaliation with the United

States Equal Employment Opportunity Commission and has satisfied all

administrative prerequisites to this filing.

13.    The conduct giving rise to the claims described below occurred in Cuyahoga

County, Ohio and jurisdiction and venue are proper.

## FACTS COMMON TO ALL COUNTS

14.    Plaintiff incorporates into this paragraph her allegations from each of the

preceding paragraphs.

15.    Ms. Keenan served as a dedicated and competent public service as an employee of

the County.

16.    At all times relevant hereto, Ms. Keenan was qualified for the positions and duties

she held and performed.

17.     OBM is responsible for the analysis and interpretation of financial matters affecting the County. OBM reviews, prepares and monitors operating and capital improvement budgets, reports estimates of resources and expenditures, identifies new sources of revenue and opportunities for alternative service delivery, oversees the performance measurement initiative, analyzes legislation, and performs debt management functions.

18.     As the Director of OBM, Ms. Keenan had responsibility for oversight and management of the Department.

19. On multiple occasions, Ms. Keenan engaged in whistleblowing activity protected under federal and state law.

**Ms. Keenan Engaged in Protected Speech Regarding Critical Nursing Shortages at the County Corrections Center**

20.     In 2018, Keenan became aware of a critical nursing shortage at the Corrections Center. Keenan both verbally and in writing warned county executive Armond Budish and other County leaders about the shortage and attendant risks.

21.     Ms. Keenan believed that the critical nursing shortage represented a matter of public concern and an imminent risk of harm to persons detained at the Corrections Center. Ms. Keenan's assigned and ordinary job duties as Director of OBM did not include overseeing the quality or levels of medical care or the quality or manner of inmate care at the Corrections Center, or ensuring that the Corrections Center maintained appropriate staffing levels of nurses to mitigate imminent risk of harm to persons detained at the Correction Center.

22.     Ms. Keenan informed Budish and County leaders in writing in April 2018, of the risks that the nursing shortage posed.

4

23.     Ms. Keenan's April email to Budish and then Chief of Staff Earl Leiken was
        explicit about the risk of the nursing shortage. Ms. Keenan informed the County
        that nursing vacancies, low wages and a failure to attract new hires created risk
        for the County and the public, explaining the potential for inmate deaths and
        resulting lawsuits.

24.     The County also received similar warnings from individuals other than Ms.
        Keenan working at the Corrections Center in 2018.

25.     The County failed to act in response to the warnings of Ms. Keenan and other
        employees in a timely manner.  As a result, the County experienced the death of
        eight individuals detained at the Corrections Center in 2018.

26.     In September 2018, the County's Agency of Inspector General ("AIG") opened an
        investigation into whether the Regional Director of Corrections Kenneth Mills
        had engaged in discriminatory conduct.  The AIG interviewed Ms. Keenan in
        October 2018.  Ms. Keenan participated in this discrimination investigation and
        confirmed that she had heard Mr. Mills make discriminatory comments in the
        workplace based on employees' race and sexual orientation.

27.     In January 2019, the AIG released its report of the Mills investigation identifying
        Keenan as a witness and participant.

28.     Defendant Mason has since falsely denied that Keenan raised concerns about
        inmate safety, and in four separate letters in 2019, the County's Department of
        Law falsely denied any such complaints from Keenan existed.

29.     Keeping with its custom and practice of retaliation, the County facilitated the
        termination of a Corrections Center nurse shortly after he publicly testified at a

County Council meeting that the former Director of the Corrections Center was blocking the hiring of nurses.

**Ms. Keenan Engaged in Protected Activity by Opposing Discriminatory Practices and Participating in an Investigation into Discriminatory Practices**

30.     During her employment, Ms. Keenan repeatedly reported and complained of conduct that she believed constituted sex discrimination and a hostile work environment in violation of Ohio law.

31.     In 2019, Ms. Keenan reported to then-Fiscal Officer Dennis Kennedy ("Kennedy"). In early 2019, Keenan proposed removing the OBM from Kennedy's reporting chain and creating an independent office of strategy and budget due to reasons including toxic influence on her staff's morale.

32.     Ms. Keenan filed a formal complaint with the County's Human Resources Department on May 5, 2019, reporting that Kennedy and other senior leaders of the County were engaged in a pattern of conduct that created a hostile work environment for her.

33.     Ms. Keenan specifically reported discriminatory conduct that included, among other things, failure to respond to emails, failure to provide requested support, making false comments that undermined Keenan's credibility and reputation, sending rude and unprofessional emails, and denying salary increase requests for her and her staff.

34.     Keenan alleged that the conduct was discriminatory, as she was paid less than male counterparts with fewer qualifications and less responsibility, and she had been subjected to discipline for conduct for which similarly situated male employees were not disciplined.

35.    Ms. Keenan's allegations were true, as the County did pay Ms. Keenan less than male counterparts with fewer qualifications and less responsibility and had subjected Ms. Keenan to discipline for conduct for which similarly situated male employees were not disciplined.

36.    Although witnesses corroborated many of Ms. Keenan's allegations, the County closed its initial investigation of Ms. Keenan's complaints in July 2019, without further action.

37.    For example, one of the witnesses informed the County investigators that former County auditor Cory Swaisgood had said that Kennedy had demanded that Keenan be fired, because Kennedy did not like to be questioned by female employees.

38.    Two other witnesses informed County investigators that Kennedy was only friendly with "white, male, Republican" OBM employees.

39.    Keenan's emails provided further evidence of discrimination, showing that she was paid less than County Council's budget liaison, even though she had more qualifications and more responsibility.

40.    The report of investigators recommended that the County engage the services of an external, neutral mediator to improve the relationship between Keenan, Kennedy, and Budish, which the County refused to do.

41.    In June 2019, Keenan reported again to HR that since her complaint of discrimination, Budish had ceased all contact with her, and stated that "this feels an awful lot like retaliation."

42.     Even after the conclusion of the County's investigation, Keenan continued to report discriminatory conduct by her supervisors, including that Kennedy had shared his belief that it was not possible to discriminate against women as a class of employees.  Keenan pointed out that the County held her to higher standards than similarly-situated males, pointing out that "this Administration has aggressively dealt with me when male employees have complained about me; to not aggressively respond to unprofessional behavior on the part of male leadership in the county is unacceptable."

**Ms. Keenan Engaged in Protected Speech Regarding Criminal Conduct of County Employees**

43.     During his employment, Defendant Dykes approved the conversion of $13,500 in illegal moving expenses for IT employee James Hay into an unauthorized "signing bonus" of $15,000.

44.     Hay complained to then IT Director Scot Rourke after Fiscal Officer Dennis Kennedy refused to authorize payment of Hay's moving expenses.

45.     The moving expenses were illegal because Hay never actually moved to Cuyahoga County—he maintained his permanent residence in Cincinnati.

46.     Dykes sought approval to convert the moving expenses to a retroactive "signing bonus" from Cuyahoga County Law Director Bob Triozzi, Kennedy, and former Chief of Staff Sharon Sobol Jordan. When he did not receive this approval, Dykes unilaterally directed the signing bonus to Hay.

47.     Keenan notified investigators of Dykes's actions and her belief that Dykes's conduct had been illegal. On February 5, 2018, Ms. Keenan gave an audio

statement to investigators concerning Dykes' unlawful involvement in the Jim Hay bonus.

48.    On March 2, 2018, Dykes told a subordinate during a consensual recording that the criminal investigation into the Jim Hay Bonus had been driven by certain County employees. Dykes specifically mentioned Maggie Keenan, whom he claimed, "did not like him."

49.    Defendant Dykes was indicted by the State of Ohio through a true bill indictment filed in the Cuyahoga County Court of Common Pleas for counts including Theft in Office (Ohio Rev. Code Section 2921.41(A)(1)), Tampering with Records (Ohio Rev. Code Section 2913.42(A)(2)), Obstructing Official Business (Ohio Rev. Code Section 2921.31(A)), and Falsification (Ohio Rev. Code Section 2921.13(A)(3)).

50.    On May 20, 2019, the State of Ohio provided a discovery disc to Anthony Jordan, Esq., attorney for Defendant Dykes, containing statements and evidence against Dykes that the State had obtained from Ms. Keenan. This disc included Ms. Keenan's February 2018 audio statement; a May 14, 2018 email thread between Kennedy, Keenan, Dykes in which Kennedy notified Dykes that he had no authority to financially compensate county employees outside of the requirements of the council-approved County Policy and Personnel Manual; and Keenan's May 18, 2018 email to Armond Budish, Dennis Kennedy, and former Chief of Staff Earl Leiken notifying them of a "critical situation in the County Jail regarding nurses."

51. By May 20, 2019, Defendant Dykes was aware of Ms. Keenan's protected speech during the investigation into his own criminal conduct.

52. At all times relevant hereto, Defendant Dykes was an employee of the County.

**Defendants Placed Ms. Keenan on Administrative Leave on December 11, 2019, and Terminated Her from Employment on December 28, 2019**

53. By December 2019, it was well known by Defendants and within the County that Ms. Keenan had raised repeated concerns about inmate safety at the Corrections Department, filed corroborated complaints of discrimination and retaliation, and credibly accused Defendant Dykes of criminal conduct.

54. On December 6, 2019, Ms. Keenan wrote to Defendant Mason with a list of open items for his review.  This list included as an open item a review of Keenan's salary to raise it to the same level as one of Keenan's male comparable peers.

55. On December 11, 2019, Defendant Mason informed Ms. Keenan that the County was terminating her employment effective December 28, 2019, and placed her on administrative leave until that date.

56. Prior to her termination, Defendant Dykes accused Keenan of being a "leak" at a County Chiefs meeting, which was reflected in an internal investigation report from Cuyahoga County Inspector General Mark Griffin. Griffin's report further confirms that Defendant Dykes had knowledge of and participated in Keenan's termination.

57. Video evidence taken from security cameras at the Cuyahoga County Administration Building on December 11, 2019, show the following:

- at 3:59 p.m., Maggie Keenan left her office on the 3rd floor of the County Administration to travel to the 8th floor for a meeting with Bill Mason and Yolanda Guzman;

- at 4:03 p.m., a County security guard stationed himself outside of Keenan's 3rd Floor office;

- at 4:06 p.m., Dykes left his office on the 7th floor to walk to the elevator. While waiting for the elevator one minute later, at 4:07 p.m., according to county phone records and surveillance video, Dykes placed a cell phone call to Eliza Wing, Cuyahoga County's Chief Communications Officer;

- at 4:08 p.m., Dykes, who had a noticeable smile on his face, entered the 3rd Floor Office of Budget and Management before Keenan returned from Mason's office;

- at 4:09 p.m., Yolanda Guzman entered the Third Floor Office of Budget and Management, followed by Keenan;

- at 4:10 p.m., Keenan left the Third Floor Office of Budget and Management followed by Guzman;

- at 4:12 p.m., Dykes left the Third Floor Office of Budget and Management and took the elevator back to the 8th Floor;

- at 4:13 p.m., Dykes returned to the area of the 8th Floor that housed the offices of Armond Budish and Bill Mason. Dykes could again be seen smiling and talking on his cell phone while walking to the Executive's chambers.

11

58. Upon Ms. Keenan's return to the Office of Budget and Management, Defendant Dykes publicly and loudly instructed County staff to "Get her out of here!" referring to Ms. Keenan.

59. The AIG claimed to have investigated Keenan's complaints of discrimination and retaliation, which it did not complete until January 2020. The AIG claims that it opened its investigation into Keenan's complaints in the summer of 2019, prior to Keenan's termination. Nonetheless, the AIG did not interview Mason or Budish until after Defendants informed Ms. Keenan of her termination in December 2019.

## COUNT ONE
### (Civil Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983)
### (Against All Defendants)

60. Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

61. Defendants' acts detailed above constitute a conspiracy to violate Ms. Keenan's constitutional rights.

62. Defendants came to a mutual agreement and understanding to remove Ms. Keenan from her position in retaliation for her protected speech. In furtherance of this conspiracy, Defendants undertook the acts detailed above, which would not have been undertaken without the agreement. Those included removing Ms. Keenan from her role in the OBM, subjecting her to less favorable terms and conditions of employment, including pay, and then terminating her employment.

63. Ms. Keenan's constitutional rights were violated because of this conspiracy, causing her irreparable harm.

64. As a direct and proximate result of Defendants' unlawful activity, Ms. Keenan has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

65. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

66. Defendants' treatment of Plaintiff as described herein was taken under the color of law for Defendant County and in retaliation for Plaintiff's exercise of her right to free speech.

67. Defendants' treatment of Plaintiff as described herein were violations of Plaintiff's clearly established right to freedom of speech, protected by the First Amendment to the Constitution of the United States of America, for which Defendants are liable under 42 U.S.C. 1983.

68. As the direct and proximate result of Defendants' unlawful, malicious, reckless, wanton and bad faith conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

69. Defendants Budish, Mason, and Dykes are liable to Plaintiff for this claim for economic and non-economic compensatory damages, punitive damages, attorney's fees and costs.

70. Defendant County is liable to Plaintiff for this claim for economic and non-economic compensatory damages, attorney's fees and costs.

## COUNT TWO
**(First Amendment Retaliation under 42 U.S.C. § 1983)**
**(Against All Defendants)**

71.     Plaintiff incorporates into this paragraph her allegations from each of the
preceding paragraphs.

72.     Ms. Keenan was a public employee who engaged in protected activity by
reporting wrongdoing and providing testimony to County and State investigators,
on matters of public concern when that speech was not part of her ordinary job
duties. In speaking out, Ms. Keenan engaged in constitutionally protected activity
under the First and Fourteenth Amendments.

73.     Defendants knew Ms. Keenan had engaged in protected speech, but took adverse
actions against her, including making caustic remarks and expressing hatred in the
workplace, creating and circulating a notice of putative employment violations,
and discharging her.

74.     Ms. Keenan's First Amendment-protected speech was a substantial or motivating
factor in the adverse actions she suffered at Defendants' hands.

75.     Defendants lacked any countervailing interest that outweighs Ms. Keenan's
interest in speaking out on the above-mentioned matters, or the public's interest in
knowing about mismanagement at the Corrections Center. The contours of Ms.
Keenan's rights to speak on matters of public concern as a private citizen were
sufficiently and clearly established at the time she exercised them to apprise
Defendants that retaliating against her for exercising those rights was unlawful.

76.     Defendants retaliated against Ms. Keenan under color of state law.

77.     As a direct and proximate result of Defendants' retaliation, Ms. Keenan has
suffered and will continue to suffer economic and non-economic damages for

which Defendants are liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment, and attorneys' fees and costs.

78.  Defendants' acts under this policy were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from adopting such unlawful policies.

## COUNT THREE
### (Local-Government Liability for First Amendment Retaliation under 42 U.S.C. § 1983) (Against the County)

79.  Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

80.  Defendants Budish, Mason, and Dykes are or were sufficiently empowered public officials that their acts constitute the customs, policies, and practices of the County. Defendants implemented and ratified a policy of retaliating against employees who criticize County administrators.

81.  Defendants' actions evidence and constitute municipal inaction in response to Ms. Keenan's protected conduct and complaints.

82.  As a direct and proximate result of this unconstitutional policy, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which the County is liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment, and attorneys' fees and costs.

**COUNT FOUR**
**(Civil Liability for Criminal Acts Under Ohio Law—Interfering with Civil Rights Under**
**R.C. 2307.60 and 2921.45)**
**(against all individual Defendants)**

83.     Plaintiff incorporates into this paragraph her allegations from each of the

preceding paragraphs.

84.     Under R.C. 2921.45 (Interfering with Civil Rights), no public servant, under color

of his office, employment, or authority, shall knowingly deprive, or conspire or

attempt to deprive any person of a constitutional or statutory right. This provision

carries a criminal penalty.

85.     Under R.C. 2307.60 (Civil Liability for Criminal Acts), anyone injured in person

or property by a criminal act may recover full damages in a civil action.

86.     The individual Defendants are public servants. Under color of their office,

employment, or authority, each knowingly deprived Ms. Keenan of her

constitutional and statutory rights as detailed above, including her right to be free

from discrimination, retaliation for reporting discrimination, and retaliation for

speaking on matters of public concern as a private citizen.

87.     As a direct and proximate result of this unlawful conduct, Ms. Keenan has

suffered and will continue to suffer economic and non-economic damages for

which Defendants are liable, including, but not limited to, pain and suffering,

inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and

other terms, privileges, and conditions of employment.

88.     Defendants' acts were wanton, willful, egregious, malicious, and worthy of

substantial sanction, including attorneys' fees and costs, to punish and deter them

and others from engaging in this type of unlawful conduct.

16

**COUNT FIVE**
**(Civil Liability for Criminal Acts Under Ohio Law—Complicity under R.C. 2307.60 and**
**2923.03 to Interfere with Civil and Statutory Rights**
**under R.C. 2921.45)**
**(against all individual Defendants)**

89.     Plaintiff incorporates into this paragraph her allegations from each of the

preceding paragraphs.

90.     Under R.C. 2923.03 (Complicity), no person, acting with the kind of culpability

required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of

the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

91.     This provision carries a criminal penalty.

92.     Under R.C. 2307.60, anyone injured in person or property by a criminal act may

recover full damages in a civil action.

93.     Defendants were engaged in complicity to interfere and attempt to interfere with

Ms. Keenan's civil and statutory rights.

94.     As a direct and proximate result of this unlawful conduct, Ms. Keenan has

suffered and will continue to suffer economic and non-economic damages for

which Defendants are liable, including, but not limited to, pain and suffering, the

loss of salary, wages, and benefits, attorneys' fees, costs, and other terms,

privileges, and conditions of employment.

95.     Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT SIX**
**(Civil Liability for Criminal Acts Under Ohio Law— Obstructing Official Business under R.C. 2921.31 and 2307.60)**
**(against all individual Defendants)**

96.     Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

97.     Under R.C. 2921.31, it is unlawful "to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

98.     Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damage's in a civil action.

99.     Defendants Budish, Mason, and Dykes intentionally interfered with Ms. Keenan's discharge of her duties as Director of Office of Budget and Management, including through the above-described conduct.

100.    As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and other terms, privileges, and conditions of employment.

101.   Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT SEVEN**
**(Complicity Under R.C. 2307.60 and 2923.03 to Obstruct Official Business under R.C. 2921.31)**
**(against all individual Defendants)**

102.   Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

103.   Under R.C. 2923.03 (Complicity), no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

104.   This provision carries a criminal penalty.

105.   Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

106.   Defendants were engaged in complicity to obstruct and to attempt to obstruct official business.

107.   As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering,

inconvenience, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

108.   Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT EIGHT**
**(Civil Liability for Criminal Acts Under Ohio Law— Intimidation of Witness in Criminal Case under R.C. 2921.04 and 2307.60)**
**(against all individual Defendants)**

109.   Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

110.   Under R.C. 2921.04, it is unlawful "by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder...a witness to a criminal or delinquent act by reason of the person being a witness to that act...."

111.   Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damage's in a civil action.

112.   Defendants Budish, Mason, and Dykes unlawfully threatened harm to Ms. Keenan, a witness to Dykes's criminal conduct, by the above-described conduct, including through terminating her employment.

113.   As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and other terms, privileges, and conditions of employment.

114. Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT NINE**
**(Complicity Under R.C. 2307.60 and 2923.03 to Intimidation of a Witness in a Criminal Case under R.C. 2921.04)**
**(against all individual Defendants)**

115. Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

116. Under R.C. 2923.03 (Complicity), no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

117. This provision carries a criminal penalty.

118. Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

119. Defendants were engaged in complicity to intimidate and to attempt to intimidate a witness to a criminal act.

120. As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering,

inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and other terms, privileges, and conditions of employment.

121.  Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT TEN**
**Sex Discrimination Under Ohio Rev. Code Chapter 4112**

122.  Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

123.  Defendants unlawfully discriminated against Ms. Keenan because of her sex with respect to the terms and conditions of her employment, including by creating a hostile work environment, unfairly and discriminatorily scrutinizing and evaluating her work, imposing discriminatory standards, pay, duties and responsibilities, denying her equal privileges and opportunities of employment, interfering with business relationships and opportunities, terminating her employment, and refusing to, rehire or reinstate her to her former position or open positions for which she was qualified, in violation of Ohio Revised Code Chapter 4112.

124.  As a direct and proximate result of the unlawful conduct of Defendants and their officers, officials, and employees, Ms. Keenan suffered and will continue to suffer economic and non-economic damages, including, but not limited to, past and future economic losses, back pay, front pay, pain and suffering, and the loss of salary, benefits and other privileges and conditions of employment, and for which Defendants are liable.

22

125.    Defendants' actions against Ms. Keenan in violation of the Ohio Revised Code
        Chapter 4112 were willful and made with reckless disregard for Ms. Keenan's
        rights, and render Defendants liable for past and future economic and non-
        economic compensatory damages, punitive damages, and attorneys' fees and
        costs pursuant to as well as any other legal or equitable relief that this Court
        deems appropriate.

**COUNT ELEVEN**
**Retaliation Under Ohio Rev. Code Chapter 4112**

126.    Plaintiff incorporates into this paragraph her allegations from each of the
        preceding paragraphs.

127.    Ms. Keenan engaged in protected activity during her employment with
        Defendants when she opposed Defendants' discriminatory conduct, complained
        about unlawful discrimination, and otherwise opposed practices forbidden under
        Ohio Revised Code Chapter 4112.

128.    Ms. Keenan opposed Defendants' discriminatory conduct by notifying
        Defendants about discrimination and retaliation against her and other employees
        with respect to the terms and conditions of employment.

129.    Ms. Keenan participated in proceedings investigating alleged violations of Ohio
        Revised Code Chapter 4112 when she participated in interviews inquiring into the
        existence of discriminatory and retaliatory practices at the County.

130.    Defendants, including through the AIG, officials, officers, managers, employees,
        and human resources representatives, have a pattern and practice of retaliating
        against employees who oppose discriminatory and retaliatory conduct in the
        workplace.

131.   Defendants retaliated against Ms. Keenan by, among other things, unfairly and discriminatorily scrutinizing and evaluating her work, imposing discriminatory standards, duties and responsibilities, investigating her, interfering with supervisory relationships, with respect to pay, interfering with business relationships and opportunities, terminating her, and refusing to promote, transfer, rehire, or recall her to open positions for which she was qualified.

132.   As a direct and proximate result of Defendants' retaliatory conduct, Ms. Keenan suffered and will continue to suffer past and future non-economic and economic losses, including, but not limited to, back pay, front pay, pain and suffering and the loss of salary, wages, bonuses, benefits and other privileges and conditions of employment, in an amount for which Defendants are liable.

133.   Defendants' actions against Ms. Keenan were willful and done with reckless disregard for Ms. Keenan's rights, and render Defendants liable for past and future economic and non-economic compensatory and punitive damages, attorney's fees, costs, and expenses pursuant to Ohio Revised Code Chapter 4112, as well as any other legal or equitable relief that this Court deems appropriate.

**COUNT TWELVE**
**Aiding and Abetting Discrimination and Retaliation**
**Under Ohio Rev. Code Chapter 4112**
**(Against All Defendants)**

134.   Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

135.   Defendants aided and abetted each other in discriminating and retaliating against Ms. Keenan because of her sex and because she opposed such unlawful discrimination based on her sex, in violation of Ohio Rev. Code § 4112.02(J).

24

136. As a direct and proximate result of Defendants' aiding and abetting discrimination and retaliation in violation of Ohio Rev. Code § 4112.02(J), Ms. Keenan suffered and will continue to suffer economic compensatory and non-economic compensatory damages, including but not limited to past and future economic losses, pain and suffering, the loss of salary and benefits, and other privileges and conditions of employment.

137. Defendants' discriminatory and retaliatory actions against Plaintiff in violation of § 4112.02(J) were willful, reckless, and/or malicious and render Defendants liable for past and future economic and non-economic compensatory damages pursuant to Ohio Revised Code §4112.99, back pay, front pay, punitive damages, attorney's fees, costs, expenses and any other equitable relief that this Court deems appropriate.

**COUNT THIRTEEN**
**Violation of the Equal Pay Act of 1963, 29 U.S.C. Section 206**
**(Against the County and Defendants Budish and Mason)**

138. Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

139. Defendants violated the Equal Pay Act, 29 U.S.C. Section 206(d), by compensating Ms. Keenan at a rate lower than that paid to male employees who perform or performed equal work in jobs that require equal skill, effort, and responsibility, under similar working conditions, because of gender.

140. As a direct and proximate result of Defendants' intentional violations of the Equal Pay Act, Ms. Keenan has suffered and continues to suffer damages for which Defendants are liable, including but not limited to economic damages, pain and

suffering, inconvenience and other non-pecuniary losses; back pay; front pay; lost

benefits; interest; reasonable attorneys' and expert fees; costs; liquidated

damages; and any additional legal or equitable relief that this Court deems

appropriate, including but not limited to reinstatement.

## COUNT FOURTEEN
### Retaliation in Violation of the Equal Pay Act of 1963
### (Against the County and Defendants Budish and Mason)

141. Plaintiff incorporates into this paragraph her allegations from each of the

preceding paragraphs.

142. Ms. Keenan engaged in activity protected under the Equal Pay Act when she

complained to Defendants, their officers, employees, and representatives, that

they were discriminating against female employees, including herself, because of

gender with regard to compensation.

143. Defendants intentionally violated, and continue to violate, the Equal Pay Act, by

retaliating against Ms. Keenan for opposing their unlawful discriminatory

practices, by, among other things, unfairly and discriminatorily scrutinizing and

evaluating her work, imposing discriminatory standards, duties and

responsibilities, investigating her, interfering with supervisory relationships, with

respect to pay, interfering with business relationships and opportunities,

terminating her, and refusing to promote, transfer, rehire, or recall her to open

positions for which she was qualified.

144. As a direct and proximate result of Defendants' intentional and ongoing violations

of the Equal Pay Act, Ms. Keenan has suffered and continues to suffer damages

for which Defendants are liable, including but not limited to past and future

economic losses, pain and suffering, inconvenience, and other non-pecuniary losses, back pay, front pay, lost benefits, interest, reasonable attorneys' fees and expert fees; costs, liquidated damages, and any other legal or equitable relief that this Court deems appropriate.

**COUNT FIFTEEN (ALTERNATIVE COUNT)**
**Civil Liability for Criminal Acts Under Ohio Law—Retaliation because Public Servants Discharged Her Duties Under R.C. 2307.60**
**(Against all Defendants)**

145.    Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

146.    Under R.C. 2921.05, no person, purposely and by unlawful threat of harm to any person or property, shall retaliate against a public servant because the public servant discharged his duties.

147.    The provision carries a criminal penalty.

148.    Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

149.    If the Court determines that Ms. Keenan's speech was made while discharging her duties and not speaking in her capacity as a citizen -- which it should not -- then Defendants retaliated against Ms. Keenan for discharging her duties.

150.    This retaliation involved ratifying discriminatory and retaliatory harassment, threatening disciplinary action, and ordering and/or terminating Ms. Keenan

151.    As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering,

inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and other terms, privileges, and conditions of employment.

152. Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

**COUNT SIXTEEN (Alternative Count)**
**Civil Liability for Criminal Acts Under Ohio Law—Complicity Under R.C. 2307.60 and 2923.03 to Retaliation because Public Servants Discharged Her Duties Under 2921.05 (Against all Defendants)**

153. Plaintiff incorporates into this paragraph her allegations from each of the preceding paragraphs.

154. Under R.C. 2923.03 (Complicity), no person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

155. This provision carries a criminal penalty.

156. Under R.C. 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

157. If the Court determines that Ms. Keenan's speech was while discharging her duties and not speaking in her role as a citizen -- which it should not -- then Defendants were engaged in complicity to retaliate and to attempt to retaliate because a public servant was discharging her duties.

28

158. This retaliation involved engaging in and ratifying discriminatory harassment, threatening disciplinary action, and ordering the termination of Ms. Keenan's employment.

159. As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, inconvenience, the loss of salary, wages, and benefits, attorneys' fees, costs, and other terms, privileges, and conditions of employment.

160. Defendants' acts were wanton, willful, egregious, malicious, and worthy of substantial sanction, including attorneys' fees and costs, to punish and deter them and others from engaging in this type of unlawful conduct.

## COUNT SEVENTEEN
### (Wrongful Discharge in Violation of Public Policy)

161. Plaintiffs incorporate into this paragraph their allegations from each of the preceding paragraphs.

162. Clear public policies from multiple sources, including in the U.S. and Ohio constitution, federal and state statutes, regulations, and administrative materials, exist protecting those in government custody from foreseeable harm, allowing County officials to gather facts and receive information, allowing Ohio law enforcement officials to conduct investigations into criminal conduct of County officials, and prohibiting obstruction of government business, witness intimidation, and interference with constitutional rights.

163. Ms. Keenan's dismissal was motivated by her protected conduct, including her speaking out about Corrections Center mismanagement and Dykes's criminal

conduct, gathering facts and receiving information, participating in investigations, conducting government business, and exercising her constitutional rights. If the Court determines that Ms. Keenan was not protected by any of the causes of action above, terminating an employee under the circumstances described above would jeopardize each of those public policies.

164. Defendants had no legitimate business justification for constructively discharging Ms. Keenan.

165. As a direct and proximate result of this unlawful conduct, Ms. Keenan has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

166. Defendants' actions against Ms. Keenan were willful and done with reckless disregard for Ms. Keenan's rights, and render Defendants liable for past and future economic and non-economic compensatory and punitive damages, attorney's fees, costs, and expenses pursuant to as well as any other legal or equitable relief that this Court deems appropriate.

## CONCLUSION

Plaintiff seeks an amount in excess of $75,000 to compensate her fully, fairly and justly for her injuries, damages and losses.  She respectfully requests that this Court enter judgment in her favor and award her economic and noneconomic compensatory damages, past and future economic losses, front pay, actual damages, consequential damages, incidental damages, reliance

damages, expectation damages, punitive damages, interest, attorney's fees and costs, and any additional legal or equitable relief as justice requires.

A TRIAL BY JURY IS REQUESTED.

Respectfully submitted,

/s/      *Daniel P. Petrov*
CHRISTOPHER P. THORMAN (0056013)
DANIEL P. PETROV (0074151)

THORMAN PETROV GROUP CO., LPA
50 E. Washington Street
Cleveland, Ohio 44113
Phone: (216) 621-3500
Fax: (216) 621-3422

*Attorneys for Plaintiff Margaret Keenan*